TERRI KEYSER-COOPER
Law Office of Terri Keyser-Cooper
Nevada Bar No. 3984
P.O. Box 147
Spirit Lake, ID 83869-0147
(208) 623-6106
(775) 674-2531

DIANE K. VAILLANCOURT
Law Office of Diane K. Vaillancourt
California Bar No. 181348
849 Almar Ave., Suite C403
Santa Cruz, CA 95060
(831) 454-0112

CV-N-03-0173-ECR-RAM

*Attorneys for Plaintiff Roger Grider*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

ROGER GRIDER,

    Plaintiff,

vs.

BOYD GAMING CORP. dba
EL DORADO CASINO,

    Defendant.

_____/

Case No. _

**COMPLAINT;**

**JURY DEMAND**

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, Title III of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 81-12181-12189, specifically §§ 12182(a), 12182(b)(2)(A)(ii), 12186(b) 28 C.F.R. § 36.302(c)(1), and pendant Nevada state law.

2. Venue in this action is appropriate in the Northern District of Nevada pursuant to 28 U.S.C. § 1391(b).

3. This court has jurisdiction to grant the declaratory relief requested pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure, Rule 57.

4. Notice has been provided to the Nevada Equal Rights Commission pursuant to NRS 651.110. Under *Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000), a plaintiff in a private Title III action is not required to provide notice to any state or local agency as a prerequisite to filing suit.

## PARTIES

5. Plaintiff ROGER GRIDER is a resident and citizen of Washoe County, Nevada. Under ADA guidelines, plaintiff is a qualified individual with a disability.

6. Defendant EL DORADO CASINO is a casino establishment located in Reno, Nevada. Defendant is registered with the Nevada Secretary of State as BOYD GAMING CORP., a Nevada Corporation with headquarters in Las Vegas, Nevada, and is licensed to conduct business in the State of Nevada, County of Washoe.

7. Defendant BOYD GAMING CORP. dba EL DORADO CASINO is a "person" within the meaning of Section 101(7) of the ADA.

8. Defendant BOYD GAMING CORP. is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA.

9. Plaintiff alleges that the defendant and/or its agents, employees, and servants performed, participated in, aided and/or abetted in some manner the acts averred herein, proximately caused the damages averred below, and is liable to plaintiff for the damages and other relief sought herein. Plaintiff further alleges that defendant ratified, approved, delegated, and authorized all actions of its agents, employees, and servants.

10. Plaintiff alleges that defendant and/or its agents, employees, and servants denied to plaintiff "meaningful access" to the use and enjoyment of its facilities.

11. Plaintiff alleges Title III applies to defendant BOYD GAMING CORP. dba EL DORADO CASINO and imposes upon defendant the general rule that no individual with a disability shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of EL DORADO CASINO.

## FACTUAL ALLEGATIONS

12. Plaintiff ROGER GRIDER is a 41 years old Reno resident. He suffers from a variety of incapacitating physical disabilities that affect his activities of daily life and make it impossible for him to hold a job. Specifically, he has low blood pressure, low blood sugar, hypertension, and one kidney. His left kidney was removed two years ago. He goes to dialysis on a regular basis, approximately twice weekly. In addition, he suffers from periodic syncopal episodes, is lethargic and is in pain much of the time. He also is subject to periodic seizures.

13. Plaintiff lives in daily fear of seizures, which can strike at any time. Sometimes they occur as often as twice a month. Even though he takes seizure medication three times a day, the seizures are a constant threat – sometimes they are triggered by stress. In the throes of a seizure, plaintiff will black out and flip around on the floor but can generally hear what is going on.

14. Plaintiff takes approximately fifteen prescribed medications daily. He has been hospitalized several times in the past few years, perhaps as many as fifteen times. Periodically he becomes so weak and lightheaded that his blood pressure drops precariously and his doctors advise him to use a wheelchair to get about.

15. Plaintiff is on full disability; his only income is S.S.D.I. (Social Security Disability Insurance) – totaling approximately $620.00 a month. This small stipend must cover rent, food, dog food and maintenance, and bills. With economic cutbacks currently in place, plaintiff's S.S.D.I. must also cover certain prescription medications.

16. Plaintiff's constant companion is his dog "Chewey" a small black Chow. Plaintiff has owned Chewy for over two years. He has trained her to be a service dog and to meet his special needs. She provides needed assistance, goes everywhere with him and is extremely well-behaved. Plaintiff could not engage in ordinary life activities without Chewey's assistance. Chewey helps him keep active because he must get up and move around with her– letting her outside and giving her walks.

17. Plaintiff's doctor has advised him that he needs to walk with a cane or a walker. But, with Chewey, he is able to get around without these assistive devices. Besides keeping him active, walking with Chewey prevents his leg muscles from atrophying.

18. As plaintiff's constant companion, Chewey fulfills the valuable role of reviving him when he has seizures. She licks and nibbles at plaintiff's hand to "wake" him up" when he blacks out. Sometimes she whines and whimpers when plaintiff has a seizure, which has happened to plaintiff on several occasions. In early March 2003, while plaintiff was at a doctor's appointment, he bent over and started to have a seizure. Chewey began licking and biting his hand. Even in the throes of a seizure, plaintiff was able to feel Chewey licking him and revived sufficiently to obtain the receptionist's attention and help.

19. A similar incident occurred in late February 2003 when plaintiff was at another doctor's appointment. He was feeling very light headed, as though he was about to black out. Chewey again licked his hand, and he was able to get the attention of the receptionist who came to his assistance.

20. On another occasion, in early March 2003, plaintiff was removed from the dialysis machine early because he was experiencing extreme low blood pressure. Plaintiff and Chewey took the bus toward home, and plaintiff stopped to get something sweet to eat to heighten his blood sugar level. Plaintiff's eyes were shut from a very bad headache so he couldn't see. But Chewey knew the way and guided both of them straight home. Without Chewey's help, plaintiff would likely have fallen on the street.

21. Plaintiff's physician, Christine LaJeunesse, M.D., has become concerned about plaintiff's complaints that some establishments will not let him inside their facilities with Chewey. She has written the following doctor's note explaining plaintiff's disability and his need for his service dog:

> January 30, 2003
>
> TO WHOM IT MAY CONCERN:
>
> My Patient, Roger Grider, is a disabled individual who requires assistance from a "Service Animal." In this instance it is his dog, Chewey.
>
> I understand that Roger has missed his last few dialysis treatments as he has not been allowed to have his dog accompany him.
>
> My office, as well as Roger, have checked with literally every agency in Nevada that might handle licensing such animals, however, Nevada does not have a law in place for this.
>
> It is certainly important to Roger's health that he be consistent with his dialysis treatments. Please allow him to bring Chewey with him to his

      treatments. Roger relates that Chewey assists him when he has syncopal episodes, which occur after dialysis on his way home.

      If you have any questions, please phone me at my office. Thank you in advance for allowing this as you do dogs for the blind.

      Sincerely,

      CHRISTINE LAJEUNESSE, M.D.

22.   While some businesses do not allow plaintiff to enter with Chewey, most businesses welcome them. It is plaintiff's practice to show his letter from Dr. LaJeunesse to whoever asks - he keeps it, along with emergency medical records, in Chewey's backpack. Most establishments, once the physician's letter is produced, understand that Chewey is a "service dog" and that plaintiff's need to have her accompany him is legitimate. Once the letter is produced, establishments generally allow plaintiff and Chewey to enter and enjoy the facilities.

23.   Chewey is well behaved, and does not have "accidents" when she is inside a business establishment and "working" on plaintiff's behalf. She is quiet and follows his commands quietly, inobtrusively and appropriately.

24.   Plaintiff does not have a kitchen at home and lives alone. Without a kitchen, it is very difficult for him to prepare meals. As a consequence he eats a lot of peanut butter and jelly sandwiches. He has a microwave but it frequently blows its circuits. Therefore eating out for him is a necessity. Without restaurant meals, he would not be able to adequately feed himself.

25.   On or about February 20, 2003, plaintiff was walking down the street in downtown Reno with Chewey. He began feeling lightheaded and noticed he had a bloody nose. He went into the closest establishment, which was El Dorado Casino. He went straight to the bar and asked for water. A man in a business suit, plainly an El Dorado employee, came up to plaintiff and asked, "What do you want?" Plaintiff responded that he wanted water. The man answered, "I prefer that you take your business somewhere else."

26.   Plaintiff explained to the man that Chewey was a service animal but the man kept repeating that plaintiff should "take his business somewhere else." It was obvious to plaintiff that he was being told to leave on account of his service dog. The man asked if Chewey had ever bitten anyone, and plaintiff responded, "No." Plaintiff further told the man that he needed water in order to

take some of his prescription medication. The man would not allow plaintiff even to have a drink of water.

27. Plaintiff left El Dorado Casino feeling extremely weak. He sat down on the pavement outside the casino with Chewey. Chewey licked his hand to keep him alert and plaintiff rested with her for some time. Plaintiff believes if he had been allowed to have some water he would have not been so slow to recover.

28. Plaintiff felt angry, discouraged, humiliated and tired of being discriminated against on account of his need for a service animal. It would have been very easy for El Dorado Casino to give him a drink of water. He felt it was outrageous for them not even to allow him water to take needed medications while he was in physical distress.

29. Plaintiff wants to be able to patronize local establishments on the same terms as any other citizen. Sometimes he is forced to stop and ask for water from a nearby establishment, and sometimes he is in need of a meal.

30. Defendant's denial of plaintiff's right to have his service dog with him at El Dorado Casino amounts to a denial of his right to equal use and enjoyment of the casino and restaurant.

## FIRST CAUSE OF ACTION

**(42 U.S.C. § 12181-12189: Title III of The Americans with Disabilities Act)**

31. Plaintiff realleges all preceding paragraphs and incorporates them by reference.

32. Title III of the ADA, which applies to public accommodations, establishes the general rule that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

33. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

34. A reasonable accommodation is a method of accommodation that is reasonable in the run of cases.

35. Plaintiff, a disabled man within the meaning of the ADA, requested an accommodation consisting of having his service dog accompany him while in El Dorado Casino. Such requested accommodation is reasonable.

36. Plaintiff alleges that the requested accommodation, allowing Chewey to accompany plaintiff while he is in El Dorado Casino, would not cause a fundamental alteration of El Dorado Casino nor would it jeopardize the safety of customers of El Dorado Casino.

37. Plaintiff sought to enjoy all benefits, privileges, goods services, facilities, advantages, and accommodations including equal access to and enjoyment of the facilities of El Dorado Casino free from ejectment, humiliation, expulsion, denial of services, and emotional distress.

38. Defendant denied plaintiff his right to enjoy all benefits, privileges, goods services, facilities, advantages, and accommodations including equal access to and enjoyment of the facilities of El Dorado Casino in that plaintiff was told to leave the premises with his service dog in a manner that a reasonable person would find objectively discriminatory.

39. As a consequence thereof, plaintiff suffered humiliation and emotional distress.

40. Plaintiff requests that the court award injunctive relief in the form of an order that El Dorado Casino be ordered to permit plaintiff to enter the facility with his service dog so that he may enjoy all benefits, privileges, goods services, facilities, advantages, and accommodations including equal access to and enjoyment of the facilities of El Dorado Casino.

## SECOND CAUSE OF ACTION

**(Nevada Revised Statutes § 651.050 et seq.: Public Accommodations)**

41. Plaintiff realleges all preceding paragraphs and incorporates them by reference.

42. NRS 651.050 et seq. protects the rights of any person to be free from intimidation, threatens, coercion, attempts to threaten, attempts to intimidate, punishment, or attempts to punish another in the use and enjoyment of public places without regard to race, color, religion, national origin or **disability**.

43. Pursuant to NRS 651.070, plaintiff is a member of a protected class based on his disability.

44. NRS 651.090 creates a private right of action for civil violations and includes provisions for injunctive relief and actual damages.

### THIRD CAUSE OF ACTION

**(Nevada Revised Statutes § 651.075 et seq.: Refusal to Admit Disabled Person Because He Is Accompanied By A Service Dog)**

45. Plaintiff realleges all preceding paragraphs and incorporates them by reference.

46. NRS 651.075 et seq. prohibits a place of public accommodation from refusing admittance or service to a person with a physical disability because he is accompanied by a service animal.

47. NRS 651.090 creates a private right of action for civil violations and includes provisions for injunctive relief and actual damages.

### FOURTH CAUSE OF ACTION

**(Pendent State Claims: Intentional Infliction Of Emotional Distress)**

48. Plaintiff realleges all preceding paragraphs and incorporates them by reference.

49. Defendant engaged in extreme and outrageous conduct, including but not limited to refusing to give him a drink of water when he clearly presented as a sick man in need of water and ordering him to leave the casino.

50. Defendant took these actions with either the intent of, or reckless disregard for, causing plaintiff to suffer emotional distress.

51. As a result of defendant's conduct, plaintiff suffered severe or extreme emotional distress and physical symptoms in conjunction with the stress.

52. The conduct of the defendant was the proximate cause of the emotional distress suffered.

53. As a direct and proximate result of the aforedescribed unlawful, wanton, and malicious conduct by defendant, plaintiff suffered grievous injuries, including but not limited to physical and emotional distress, and humiliation.

54. The acts of defendant were intentional, wanton, malicious, and oppressive and made with reckless indifference to plaintiff's rights thus entitling plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

55. Wherefore, Plaintiff prays for judgment against defendant as follows:

(a) For an injunction prohibiting the policies, practices, and acts complained of herein;

(b) For an order rescinding defendant's expulsion of plaintiff and his service dog from El Dorado Casino;

(c) For a declarative judgment that the policies, practices, and complained of herein are illegal and unconstitutional;

(d) For compensatory damages from defendant in an amount to be determined at trial.

(e) For nominal damages;

(f) For attorney fees and costs incurred herein;

(g) For leave to amend this complaint should the same become necessary;

(h) For such other and further relief as this Court may deem appropriate.

Dated: this 28 day of March, 2003

_____
TERRI KEYSER-COOPER
DIANE K. VAILLANCOURT
Attorneys for Plaintiff Roger Grider